IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANG LIEM,<br><br>    Petitioner,<br><br>  v.<br><br>KATHY MENDOZA-POWERS, Warden,<br><br>    Respondent.<br>_____/ | No. C 05-0514 CW<br><br>ORDER DENYING<br>PETITION FOR WRIT<br>OF HABEAS CORPUS |

    Petitioner Dang Liem (Dang), an inmate incarcerated at Avenal State Prison in Avenal, California, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent Kathy Mendoza-Powers, warden of Avenal State Prison, opposes the petition. Petitioner did not file a traverse. The Court DENIES Dang's petition for a writ of habeas corpus.

BACKGROUND

    On October 1, 2001, Dang was charged by information with two counts of aggravated sexual assault on a child in violation of California Penal Code § 269 and one count of committing a forcible lewd or lascivious act on a child in violation of California Penal Code § 288(b)(1). Clerk's Transcript (C.T.) 77. On May 2, 2002, a jury found Dang guilty on the § 288(b)(1) charge and not guilty on the § 269(a)(2) charge of rape of a child. The jury could not

reach a verdict on the remaining § 269 charge. C.T. 246-49. Dang was sentenced to eight years imprisonment. The California Court of Appeal affirmed the conviction in an unpublished written opinion on October 16, 2003, and the California Supreme Court denied Dang's petition for review on January 14, 2004. Dang did not seek other state post-conviction relief. He filed his federal habeas corpus petition on January 7, 2005.

The following facts are taken from the California Court of Appeal's unpublished opinion ruling on Dang's Direct Appeal.

> At the time of the events alleged in the information (July through October 1998) the victim was six years old. Victim's father and mother were divorced. Victim lived with her mother during the week and stayed with her father on the weekends.
> Defendant was victim's father's cousin's husband, although victim referred to him as her uncle. During the relevant time period defendant and his wife lived in the second-floor bedroom of a two-story house. They rented the rest of the house to other people. Victim's father rented the converted garage. Defendant moved out of the upstairs bedroom in 1999 and thereafter stayed at the house off and on, sleeping on the couch in the living room whenever he did so.
> On January 6, 2000 victim told her mother that sometimes when she visited her father's house defendant would try to put his 'weewee' in her 'weewee.' Victim said that she was really scared and did not want to go to her father's house because 'she was threatened.' Victim's mother called the police department and Officer Cassondra Lansberry arrived and interviewed victim.
> Victim explained to Lansberry that sometimes when she was visiting her father he would be called in to work. On those occasions he left victim in the care of defendant. Victim said that whenever this happened defendant 'tricked' her by calling her upstairs to his bedroom to play a video game but when she went upstairs defendant would put a 'suck movie' in the video player. Victim explained that a suck movie was one where the boy did 'bad things' and put his 'dick' on the girl's 'thingy.' After the movie defendant would put his 'dick' on victim's 'thingy' then in her 'thingy.' Sometimes he would touch her genitals with his fingers. Sometimes the touching was over the clothes, sometimes on her bare skin. She reported that the touching hurt,

2

United States District Court
For the Northern District of California

that it was hot and it burned, like hot water.

Officer James Hunt interviewed victim at the children's interview center. The jury viewed the taped interview during trial. In the course of the interview victim repeated her allegation that defendant 'put the dick on me' after he showed her the 'suck' movie. Victim again reported that her uncle had 'tricked' her into coming up to his room and that this happened when nobody else was home. Victim said she asked defendant, 'Uncle Liem, what the heck are you doing on me?' She said that these things happened 'a lot.' Each time Hunt encouraged the victim to explain what her uncle had done to her she cried. When Hunt first asked victim to tell him what defendant had done she began to sob and said she did not want to talk about it. She then said 'If I don't, if I don't get my mom back from me, how can I, uh, what do, I want your umm, people to get my uncle, because he's a bad bu-, guy.' When Hunt asked victim why she was afraid of defendant victim responded, 'He's gonna do the suck thing on me.'

Victim gave similar testimony at trial. She said that when her father left her in defendant's care defendant would call her up to his room to play video games, that he would put '[b]ad movies' in the video player, and that he would touch her 'private.' The touching hurt and she did not like it. When defendant played the video she covered her eyes and ran downstairs and locked herself in her father's room.

Defendant told victim '[a] lot of times not to tell anybody what he did to her. Victim was unable to say what, if anything, would happen if she did tell. However, victim also testified that she did not reveal defendant's conduct any sooner than she did because she was 'scared that I was going to go away from my mom and I cannot see her.' The reason victim finally chose to reveal the conduct was because 'I couldn't stand it and my head was like getting exploded and my face was getting red. And when I tried to do my math I can't do it and I keep on getting it wrong . . . I always hear my teacher say when you have something that what happened you cannot hold it you have to tell an adult.'

Victim's father's testimony established that he indeed had left victim in defendant's care on several occasions between July and October 1998. The sexual assault examiner conducted a physical examination of victim on January 10, 2000, a few days after victim first disclosed the molestation and over a year after the conduct is believed to have occurred. The examiner could not find any definite physical evidence of penetrating trauma but could not rule out the possibility of sexual contact in the past.

Respondent's Exhibit H at 2-4.

3

Dang now challenges his conviction on two grounds, both of which he raised in his state court appeal: (1) prosecutorial misconduct which deprived him of his Sixth Amendment right to confrontation and his Fourteenth Amendment right to due process and (2) insufficient evidence to sustain the conviction under Penal Code § 288(b), in violation of the Fourteenth Amendment.[1]

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;[2] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 402-04, 412 (2000).  A state court decision

---

[1] As Respondent notes, Petitioner does not include a factual basis to support his claims.  However, the Court assumes, as did Respondent, that Petitioner intends to make the same arguments he advanced on direct appeal before the state court.

[2] Both prongs of § 2254(d)(1) apply to questions of law and mixed questions of law and fact.  <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1150 (9th Cir. 2000), <u>overruled on other grounds</u>, <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-74 (2003).

4

may not be overturned on habeas review simply because of a conflict with circuit-based law. Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000). However, circuit court decisions may be persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Id.; see also Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 124 S. Ct 446 (2003); Moore v. Calderon, 108 F.3d 261, 264 (9th Cir. 1997).

A state court's decision is "contrary to" Supreme Court law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or reaches a different conclusion based on facts indistinguishable from a Supreme Court case. Williams, 529 U.S. at 412-13. A state court's decision constitutes an "unreasonable application" of Supreme Court precedent if the state court "either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Id. at 407. An "unreasonable application" of federal law is different from an incorrect or erroneous application of federal law. Id. at 412. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The reasonableness inquiry under the

5

"unreasonable application" clause is objective.  Id. at 409.

## DISCUSSION

I.  Prosecutorial Misconduct

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982).  Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.) (citation omitted), cert. denied, 516 U.S. 1017 (1995).

A court may take into account the following factors in determining whether misconduct rises to a level of a due process violation: (1) the weight of evidence of guilt, United States v. Young, 470 U.S. 1, 19 (1985); United States v. Schuler, 813 F.2d 978, 982 (9th Cir. 1987); (2) whether the misconduct was isolated or part of an ongoing pattern, Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct related to a critical part of the case, Giglio v. United States, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstated or manipulated the evidence, Darden, 477 U.S. at 182.

During cross-examination of one of the detectives who worked on the case, defense counsel established that the officers never searched the house where Dang and the victim's father lived or entered any pornographic material into evidence.  Reporter's Transcript (R.T.) 96.  During her closing argument, defense counsel

6

again noted that no pornographic materials were ever recovered from the home. R.T. at 464-65. In rebuttal, the prosecution argued, "The police can't go out and just randomly search the houses. She [defense counsel] knows that they need a search warrant." R.T. 507. Defense counsel objected, and the trial court overruled the objection finding that the prosecution's argument was in response to the defense's argument. Id.

The prosecution went on to argue,

> I don't presume to be an expert in search warrants, one of the requirements for an officer to get a search warrant is that they have to have relatively recent knowledge. They have to say, gee, within typically about the last 10 days, fresh knowledge, we have reason to believe we might find pornography there. In this case . . . my recollection of the evidence is that the defendant had long since moved out of the house. And he may have left some belongings behind, but chances are he knew what he'd been doing, he wasn't going to leave behind pornography. It's the kind of thing[] you don't advertise to other members of the household. You don't leave it out in a public place. When he left he probably would have taken it.

R.T. 507-08.

On appeal, Dang argued that this argument was inappropriate because the prosecutor improperly asserted personal knowledge, misrepresented the truth, improperly vouched for the victim's credibility, and the prosecutor "in the guise of closing argument told the jury what the testimony of an uncalled witness would have been." Respondent's Exhibit C at 10-12.

Dang argued that the prosecutor asserted personal knowledge that the officers would not have been able to get a search warrant and that they would not have found any pornography anyway. Similarly, Dang argued that the prosecutor misrepresented the truth

7

by suggesting that it would have been difficult for the police to obtain a warrant to search his home and inappropriately bolstered the credibility of the victim's testimony by offering a reason that no pornographic materials were introduced into evidence. The state court rejected these arguments, finding that the prosecutor was simply responding to defense counsel's argument and appropriately offering an alternative explanation for why no pornographic evidence had been entered into evidence. Prosecutors are given significant leeway in their closing argument to offer alternate theories of the evidence presented. See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993) ("Prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence.").

Dang also argued that the prosecutor's closing was inappropriate because it "told the jury what the testimony of an uncalled witness would have been and violated [Dang's] Sixth and Fourteenth Amendment rights to confront and cross-examine the uncalled prosecution witness." Petitioner's Exhibit C at 12. However, the prosecutor did not assert that her argument was based on any information that she had gleaned from an uncalled witness. As stated above, she only provided an alternate theory for the defense's theory that the victim must have been lying about the pornographic movies because the movies were never admitted into evidence. This claim does not provide grounds for granting the petition.

II.  Sufficiency of the Evidence

The Due Process Clause "protects the accused against

8

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  However, a federal court reviewing a habeas petitioner's claim that the evidence was not sufficient to support the state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt is the evidence insufficient to support the conviction.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  Moreover, if confronted by a record that supports conflicting inferences, a federal habeas court must presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution.  Jackson, 443 U.S. at 326.

9

On direct appeal, Dang argued that there was insufficient evidence to support his conviction under California Penal Code § 288(b), which requires a finding that the lewd or lascivious act was accomplished "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Cal. Penal Code § 288(b). The California courts define "duress" as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." People v. Schultz, 2 Cal. App. 4th 999, 1005 (1992). The totality of the circumstances are considered, including the age of the victim, the familial relationship between the victim and the perpetrator, and the disparity in size between the victim and the perpetrator. People v. Cochran, 103 Cal. App. 4th 8, 14 (2002).

At the time of the offense, the victim was six years old, and considered Dang to be her uncle. Dang was given authority over the victim when she was left with him. The victim testified that she was afraid of Dang and that he told her many times to keep secret what happened in his room. She also testified that she feared being taken from her mother if she told anybody what had happened. The victim's mother testified that her daughter told her that she didn't want to go to her father's house because she felt "threatened." Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the victim's acquiescence was due at least in part to an implied threat

10

of force, violence, danger, hardship or retribution.  This claim does not provide grounds for granting the petition.

CONCLUSION

Based on the foregoing, the Court DENIES Dang's petition for a writ of habeas corpus.  Judgment shall enter accordingly.

IT IS SO ORDERED.

Dated: 4/20/07



CLAUDIA WILKEN
United States District Judge

11